[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action by the plaintiffs, Edward McLaughlin and Viola McLaughlin as against Salvatore Ferro, D/B/A Milford Roofing, also D/B/A Champion, for damages caused by a poorly executed roofing job. The claims allege negligence, breach of contract, and a violation of Connecticut's Unfair Trade Practices Act (hereinafter referred to as CUTPA). The defendant filed a counterclaim for unpaid work performed on the interior of the house.
The parties agreed that Mr. Ferro would perform a roofing job on the property located at 124 5th Street in Milford, Connecticut owned by Mr. McLaughlin's wife. The price would be based upon a written estimate of $6,140 which Mr. Ferro submitted previously. In a series of three installments, Mr. McLaughlin paid Mr. Ferro $6,925 which comprised the original estimate plus additional expenditures. Mr. Ferro began work on the house on April 15, 1996. The parties agree that Mr. Ferro used firing strips to compose the roof of the house. Shortly thereafter, a storm ensued and rain went through the roof, damaging much of the interior of the house. As a result, it was agreed that Mr. Ferro would perform additional work on the interior of the house. The work consisted of replacing homocote ceiling panels, cleaning up and painting.
Although Mr. Ferro represented to Mr. McLaughlin that he was insured, the defendant testified that he never put a claim in for damages because he believed that he would not be covered. He also failed to provide proof that he was insured when requested to do so by the court. As a result, Mr. McLaughlin submitted a claim to his insurance company. The insurance company paid somewhere between $3,700 and $5,000 (both parties disagree on the amount) to the defendant, who later turned the money over to the plaintiffs. The defendant was never paid for the work. CT Page 1378
In early May of 1996, the defendant told Mr. McLaughlin that the house was ready for occupancy. The condition that the defendant left the house in was defective. Plaintiff's Exhibits E-12 and E-14 showed nails protruding through the bedroom closet walls. These were not mere tacks, but huge two to three inch spikes. Plaintiff's Exhibit E-11 showed debris that was left on the lawn. Mr. McLaughlin also testified that he could see "daylight" through the firing strips fitted by the defendant.
Two additional construction workers looked at the work and performed additional work of their own. Mr. Carlson's Company repaired the siding and the flooring. Mr. Stordy testified that he tore down the existing roof and installed a new one.
The plaintiffs presented a plethora of evidence to demonstrate that the roofing job was executed negligently. TheOne and Two Family Dwelling Code, prepared by the Council of American Building Officials provides that "Asphalt Shingles" may be applied only to "solidly sheathed roofs." See R-803.1. The plaintiffs produced pictures and witnesses to demonstrate that daylight could be seen through the sheathing. In addition, nails were left protruding through the walls of the bedroom closet. The Defense claims that they left the nails unclipped because their primary concern was to fix the damages caused by the storm; however, there would be no rain damage if Mr. Ferro had not failed to adequately protect the house.
The court enters judgment for the plaintiff in the amount of $7,987 plus costs. The figure comprises the following: $10,500 which Mr. McLaughlin paid Mr. Stordy to remove the old roof and install a new one, $87 which he paid for the removal of the debris. The defendant is credited $3,500 for the interior work which the insurance company paid, since there was little evidence of negligence with respect to Mr. Ferro's work on the interior of the house.
The court also holds that the defendant's conduct violated CUTPA. Mr. Ferro represented both to the plaintiff and to the court that he was insured. In court, the defendant testified that he was insured by Connelly, but he did not think that they would cover him. The court ordered the Defense to submit proof that Mr. Ferro was insured and they failed to do so. Nevertheless, neither punitive damages nor attorney's fees will be awarded in this case. The plaintiffs failed to prove that this misrepresentation CT Page 1379 was motivated by anything other than poor judgment.
BY THE COURT,
___________________________ Philip E. Mancini, Jr. Judge Trial Referee